### 29742. ADAMS *et al. v.* EVANS.

#### DECIDED DECEMBER 4, 1942.

*Bussey & Fulcher, Henry J. Heffernan,* for plaintiffs in error.
*Hammond, Kennedy & Yow, Curry & Curry,* contra.

PER CURIAM. Mrs. Mollie Evans filed suit against Jack Adams, C. J. Adams and John Newman Jr., to recover damages for the alleged tortious homicide of her husband. There was a verdict for the plaintiff, which was set aside on appeal to this court. *Adams* v. *Evans,* 64 *Ga. App.* 515 (13 S. E. 2d, 845). When the judgment of reversal was made the judgment of the lower court the action was dismissed by plaintiff and another suit was filed. See report

of the case cited above for the statement of the pleadings. The only difference between the petition in the former case and the one in the instant case is that the petition in the latter alleged that the car driven by John Newman Jr. and the one driven by Jack Adams simultaneously struck the car in which plaintiff's husband was riding; whereas the first petition alleged that the Newman car hit the Evans car and that the Adams car hit the Newman car and accentuated the impact between the Newman car and the Evans car. The jury found for the plaintiff against all the defendants. They excepted to the overruling of their motion for new trial.

1. About the only new evidence on the trial of the present case was the testimony of Raley Jones and the enlarged photographs of the wrecked cars. Jones testified: "I had one year of special training in the preventing of automobile accidents, and as to what causes them and determining speed, and the checking of cars involved in accidents. . . Also a very thorough course in the analysis of accidents. . . I remember the collision between the cars of Mr. Jack Adams and Mr. C. J. Adams, and Mr. Newman, on the one hand, and that of Mr. L. D. Evans Jr., on the other. I took some pictures of that accident. One picture shows the Evans car at an angle from the left front, left front door to the rear of the car. This picture is a close-up view showing a definite break in the chassis in the left-hand side of the Evans car. The picture in reference to the condition of the road is taken looking northeast on the Milledgeville Road, facing west-going traffic, showing skid marks on the asphalt surface near the fresh concrete. The skid marks were on the left-hand side of the road going east. . . This is a complete picture of the Evans car, showing the damage to the left front door and destruction of the left side of rear.

"Plaintiff's exhibit 6 is a picture of the front view of the Newman car, and plaintiff's exhibit 7 is a picture of the Adams car. This picture shows the right-hand side, partial damage to the right front. Plaintiff's exhibit 8 is a picture of the rear view of the Newman car, showing damage to left rear bumper. Plaintiff's exhibit 9 is an enlargement of the Adams car, showing the damage to the right front side. Right front end, you might call it. The next picture is an enlargement showing the damage to the front end of the Newman car. Plaintiff's exhibit 11 is an enlarged view of the Evans car, showing the left-hand side and damage from

front to rear. Plaintiff's exhibit 12 is an enlargement primarily focused on the left front door of the Evans car.

"Yes, I am familiar with this intersection and the location where the cars were found, and the post against which the Evans car was found after the collision was over. This model Oldsmobile, referring to the Newman car, has a bullet-type headlight. The fixture is between the fender and the radiator of the car. The primary difference between the two types of headlights is that the contour of the Oldsmobile headlight is absolutely round, just as round as a watch crystal, whereas, compared with the later model Dodge, 1940 Dodge, the rim of the headlight itself is different from that of the rim of the Oldsmobile, in view of the fact that the parking lights are up at the top and made into the rim of the Dodge, this late model car, and the Oldsmobile parking lights are not made into the headlights. Because of the round shape it has not the effect there as compared with this headlight. The difference with reference to the grill guard is that the Oldsmobile, as you see in this picture, has what we refer to as a 'V' type. It comes to a point at the top and there is a steel bar that extends down to the bottom of the 'V,' which would work upside down to the bumper when it is attached. The Dodge has a straight bar out from the bracket attached to the bumper, which comes back over and turns slightly down, rounding off the corner down to the extreme end of the bumper, and as shown, the left side view over here, is as it was prior to the collision. There is an indentation in this door as shown in the picture and it is not of a circular type. Immediately underneath this egg-shape indentation on the door, there is a straight mark, paralleling the bottom of what we would term as a lens or rim. The indentation is a straight line—horizontal line. This is the indentation here and it is not of a circular nature in this picture. It is in the form at the top such as if you would stand an egg up and look at the small part of the egg at the top and broadens out at the bottom, and maybe there is a small indentation paralleling the bottom of the rim, a straight mark.

"On plaintiff's exhibit 1 there is a hole punched or jabbed completely through the left rear door, immediately underneath the handle, and extending back at an angle towards the rear wheel at about thirty degrees. The right front portion of the Dodge car, the right fender, is torn, the headlight is torn completely out of

the guard bracket, and the bumper is bent back towards the right front axle. The right front line as designated in this picture is completely demolished and torn completely aloose from the right front fender. There are other markings on the right front fender where the fender is bolted to the body, the right front portion of the body. This mark is at least twelve inches long.

"I examined the three cars involved in this wreck. To some extent the condition of those cars was more apparent in looking at them than examining the photographs. There are certain things, certain angles, in looking at any wrecked automobile, certain characteristics will be seen with the eye that the photograph will not bring out, and adversely there are certain things that the photograph will bring out that you didn't see with the eye. On the left front door of the Evans automobile there was an imprint or impression circular in shape. There was an indentation on the left front door of the Evans car that was in the shape of what you might term, well, it had a pointing appearance at the top and it was not of a round circular shape, except for the upper portion of the outside where it came down to the bottom, where it was round, and when it came to the top it began to loop over and point, just at the top. There was an imprint immediately underneath the other I have just described, a very slight imprint; it was pressed in. On the rear door of the Evans car there was an oblong shaped hole punched in the rear door, running approximately say three inches back from where the socket of the door handle goes in. Not the handle itself, but the piece that goes on the door and unlatches the door, down about four or five inches. It was approximately two to two and one half inches wide. It increased as it went down in width.

"The headlight on the Adams car was a bracket type that have their parking lights above the bright light lens. It is all built into a bracket that brought about this new circular point at the bottom. It is like an egg, it is round at the bottom and when you get to the top it points in these brackets to provide for these little parking lights. The headlights of the Newman Oldsmobile are what we generally refer to as a bullet-type headlight. It is practically round. They don't have the same contour as the Adams car. On each front fender and immediately under the headlights, you might call it a guard fender, or fender guard, because it ac-

tually would have a tendency to protect the fender more so than it would the grill, the rod grill. There was a bracket that came up from the outside, the extreme outside edge of each bumper on each side, came straight up about three or four inches and then it curved, a round curve coming in towards the center of the rod, came straight across and connected to another bracket that held that stationary to the bumper. The shape of the top of this fender guard on the Dodge automobile was practically straight up or horizontal. The position of that part was right immediately under the headlight. I examined and knew the type of fender guard on the Newman car. It is what we refer to as a 'V' type, only it is upside down, comes to a point right at the top and comes and is attached to the bumper. It would not be exactly under the headlights, it would sit just a little to the left of the headlights on the Oldsmobile.

"In examining the Newman car after the wreck was over, we found some metal projection that was in position. Some piece of steel that I presume holds the hood together, the center at the top, a piece of steel rod, you might call it, that goes out to the front of the automobile, which was protruding out some five or seven inches, because of the hood being bent back, and left this position in between sticking straight out. Where the metal comes up around that shell of the rod and it is torn away that rod there protrudes out in a looping effect, and when it gets back where the actual rod supports the hood I think it runs about half an inch. I didn't have anything to measure it with. The left rear fender of the Newman car was not damaged. The bumper was bent backwards approximately 3½ inches from the left side of the bumper. That could have been done by a car going in the same direction as the Newman car, in passing it could have bent the bumper backwards."

On cross-examination Jones testified: "I can not say positively the exact date of this accident. I know it was during the year 1939, and I would say either in November or December. I went out there not more than two days after the accident. I took the pictures myself, but did not develop these pictures. I am a photographer but not a developer. I can take pictures and know the mechanics of them but don't do any developing. . . The Evans car was either a '37 or '38 black Oldsmobile. The Newman car was also a black Oldsmobile. I am not sure if it was a '37 or '38.

As well as I recall they were both black and perhaps the same model. The Evans car was a four-door sedan and the Newman car, as well as I recall, was a coach. It could have been a four-door sedan but my best recollection is it was a coach. The Adams car was a 1939 Dodge, either a sedan or a coach. . . As I recall it was red. I made no examination for paint marks at all. I presume that is the Evans car wrapped around the post. I was not there the night of the accident. That is an enlarged picture of the Evans car. Those are exhibits 1 and 1-A. This number 1 is an enlargement of 1-A. There are no doors showing on that picture except the left rear. With reference to the car when I got there I can not answer. As far as the wrecked condition, yes sir, but as far as what I am thinking, I am not in a position to say, as I actually don't remember. I remember this, that this is the way the car was wrecked. This is the wrecked car I took a picture of. This picture is plaintiff's exhibit 2. That is the Evans car. It is taken from the same side but a different position. . . The door in this picture is right across the wheel. There is no other door there. That door was undoubtedly placed there for the purpose of taking this picture. It was not there in the other picture. I don't remember whether I put the door there or Mr. Wilkins put it there, or whether I had a mechanic put it there. But the door was put there. As far as I know this is the proper door in the proper position. It matches the rest of the car. The last time I examined those cars was at the time I was out there. That was the only time and that was prior to the trial of this case.

"The answers I gave are based on physical facts. The same physical facts existed at the last trial. I had the same physical facts before me at the last trial except these enlarged pictures. The deductions I have given are not based from the enlarged pictures, because the same things are on the smaller ones. In the last trial no question was asked me, as I recall, as to those, as to whether one car struck the other."

Despite the direct testimony of certain witnesses that the Adams car did not hit the Evans car, one of the witnesses testified that the Adams car hit the Newman car. The Adams car was red. The left side of the Evans car was the side which was exposed to the approaching Adams and Newman cars. A policeman testified that on the left side of the Newman car there was red paint. The

Adams car and the Newman car were, as it appears from the evidence, running side by side close together and were running fast. The Evans car was badly battered all along its left side. It is inferable that one car did not do all the damage. It is clear that the Newman car did some of it. The rest must have been done by the Adams car. It was the contention of the plaintiff that the imprint of the headlight of the Adams car was found on the left front door of the Evans car, and that the Newman car struck the rear left door of the Evans car and left an imprint or physical evidence on the door to so indicate. There was evidence by an expert in detecting the causes of automobile wrecks that some imprints on the front left side of the Evans car, as shown by pictures presented to the jury and from his personal inspection of the car, were of such character as to authorize an inference that they were made by the Adams car. The enlarged picture of the Adams car shows that it was mashed in on its front on the right-hand side, the right front fender being mashed back and broken at the bottom, the right front headlight bent down, the right side of the front fender bent back, and the right front tire was flat. The enlarged picture of the Newman car shows that it was mashed in on the front, but there was damage all the way across the front, the right front tire was flat, the right front rim bent, the radiator and hood mashed in and back, and the right half of the windshield broken. From this evidence and all the facts and circumstances of the case the jury was authorized to find that the Evans car was struck by both the Adams car and the Newman car.

2. The court did not err in admitting the testimony of Jones, under the circumstances, for any reason assigned in grounds 4, 5, 6, and 7 of the amended motion for new trial.

3. The following charge of the court as contained in ground 8 was not error: "I charge you, gentlemen, that under the law motorists are required to stop at designated places where official highway signs are placed, where such roads join main highways, as in this case. Whether the law has been obeyed or not is a matter for your determination, obeyed by those who ran on Olive Road, the plaintiffs in this case. If they failed to observe the law and such failure was a contributory factor in their case, is a matter for your determination, and for you to give such consideration to as to your jury mind thinks it would be given."

4. The following excerpt from the charge is excepted to in ground 9: "You may determine from these speeds whether or not under the circumstances some one was negligent in driving fast, and just what would be considered fast under those circumstances." This was not error against the defendants in that the judge did not state that those speeds prohibited by law constituted negligence per se.

5. Ground 10 excepts to the following charge: "Of course you may also consider, as I have instructed you, the physical condition of the various drivers of the cars, the various cars, and that would of course include their intoxicated condition if they were intoxicated, and what effect that would have on the drivers of any one of the cars." Although there was no evidence that all of the drivers were intoxicated, there was evidence that one was, and it was not prejudicial error to charge as complained of in this ground, the jury having been instructed that they could consider the intoxicated condition of the drivers, "if they were intoxicated." The charge is not subject to the criticism that it failed to instruct the jury that drunkenness on the part of a driver of an automobile is negligence per se, as the court later on in its charge did so instruct the jury.

6. The evidence authorized the verdict for the plaintiff, and no error of law appearing the court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*

FELTON, J., dissenting. The enlarged photograph of the Adams car shows that it was mashed in on the right front side. It shows that the right front fender was mashed back and broken at the bottom, the right front headlight bent downward, the right side of the front fender bent backwards, and the right front tire flat. An enlarged picture of the Evans car, showing its left side to the front, shows it was demolished from the front to the lower part of the back fender. It does not appear to have been hurt from that point to the rear. The small back window was not broken and most of the back fender and the trunk were uninjured. The hub cap of the back wheel is shown to be missing. There is a hole just below and to the right of the back-door handle. The middle of the car is shown to be totally wrecked. The front seat is mashed to the ground and the front doors can not be identified. The en-

larged picture of the Newman car shows that it was mashed by an impact centering on the right front. Most of the injury is to the right side, but there was damage all the way across the front. The right front tire was flat, the right front rim bent, the radiator mashed in and back, the hood mashed back and up, the right half of the windshield broken, the right front fender mashed and practically wrapped around the top of the right front tire. Jones did not give his opinion as to what his inspection of the wrecked cars showed had happened.

The contention of the defendant in error is that "the imprint of the left front headlight and the fender guard of the Adams car was found on the left front door of the Evans car," and that "the Newman car struck the left rear door and drove a hole into the door underneath the lock." I think the conclusions too conjectural and problematical to have any weight against the positive testimony that the Adams car did not strike the Evans car, which evidence, it might be stated, showed at the same time that the Adams car did strike the Newman car on the side. If the right side of the Newman car struck the Evans car at a point just to the right and bottom of the back door of the Evans car it is hard to see how the right side of the Adams car could have struck the front door of the Evans car as contended and in the manner contended, at the same time. I do not think the pictures or the independent testimony of Jones, or both combined, authorized the finding that the Adams car struck the Evans car at all, much less in such a way and at such a time as to contribute to the injuries sued for. I dissent from the judgment of affirmance.